UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BERKMAN PLAZA 2, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION |
| | ) | |
| FIDELITY AND DEPOSIT COMPANY | ) | NO. 1:09-CV-1116-ODE |
| OF MARYLAND; ZURICH AMERICAN | ) | |
| INSURANCE COMPANY; and | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff BERKMAN PLAZA 2, LLC (hereinafter referred to as

"Berkman"), by and through its undersigned counsel, brings this action against the

Defendants, Fidelity and Deposit Company of Maryland (hereinafter referred to as

"F&D"), Zurich American Insurance Company (hereinafter referred to as

"Zurich"), and Federal Insurance Company (hereinafter referred to as "Federal")

(F&D, Zurich, and Federal being sometimes referred to hereinafter as "Sureties" or

"Defendants"), and alleges as follows:

## GENERAL ALLEGATIONS

1.      Zurich was at all times material hereto, and is currently, a for-profit

corporation, organized and existing under the laws of the State of New York, with

its principal place of business located in New York, New York, but authorized to transact and transacting business in both the State of Georgia and the State of Florida as a foreign corporation; Zurich may be served with process by service upon its Georgia registered agent, Corporation Service Company, located at 40 Technology Parkway South, #300, Norcross, Gwinnett County, Georgia 30092.

2.    F&D was at all times material hereto, and is currently, a for-profit corporation, organized and existing under the laws of the State of Maryland, with its principal place of business located in Schaumburg, Illinois, but authorized to transact and transacting business in both the State of Georgia and the State of Florida as a foreign corporation; F&D may be served with process by service upon its Georgia registered agent, Corporation Service Company, located at 40 Technology Parkway South, #300, Norcross, Gwinnett County, Georgia 30092. On information and belief, F&D is, and was at all times material hereto, a wholly-owned subsidiary of Zurich.

3.    Federal was at all times material hereto, and is currently, a for-profit corporation, organized and existing under the laws of the State of New Jersey, with its principal place of business located in Warren, New Jersey, but authorized to transact and transacting business in both the State of Georgia and the State of Florida as a foreign corporation; Federal may be served with process by service

- 2 -

upon its Georgia registered agent, CT Corporation System, located at 1201 Peachtree Street, NE, Atlanta, Fulton County, Georgia 30361.

4.     Berkman was at all times material hereto, and is currently, a Georgia limited liability company, with its principal place of business located in Atlanta, DeKalb County, Georgia.

5.     This Court has jurisdiction over this matter and personal jurisdiction over all of the parties hereto, and venue is proper in Fulton County.

6.     On or about December 20, 2005, an entity named DB Holdings, LLC, a Georgia limited liability company (hereinafter referred to as "DB Holdings") and Choate Construction Company, a Georgia corporation (hereinafter "Choate") entered into a written construction contract (hereinafter referred to as the "Contract"). All rights and obligations of DB Holdings under this Contract were subsequently assigned and delegated to Berkman, and the Contract was amended on or about August 8, 2006 to reflect this fact.

7.     Choate is a for-profit corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in Atlanta, Fulton County, Georgia.

8.     Pursuant to the terms of the Contract, Choate agreed to construct a project consisting of a high-rise condominium tower, a multi-story concrete

- 3 -

parking structure, and related amenities on certain property owned by Berkman and situated at 500 East Bay Street, Jacksonville, Florida (hereinafter referred to as the "Property"). This project is known as Berkman Plaza - Phase 2 (or Phase II) (hereinafter referred to as the "Project"). A true and correct copy of a portion of the Contract is attached hereto and incorporated herein by reference as **Exhibit "A"**.

9. Pursuant to the terms of the Contract, Choate was required to and did furnish both a Payment Bond ("Payment Bond") and a Performance Bond ("Performance Bond"); as well as a Dual Obligee Rider related thereto (the "Rider). In exchange, Berkman paid Choate $226,814.79 as the premium charged for the Bonds. True and correct copies of these Bonds and the Rider (sometimes collectively referred to hereinafter as "Bonds") are attached hereto and incorporated herein by reference as **Exhibit "B"**. Zurich, F&D (a wholly-owned subsidiary of Zurich), and Federal were the sureties on the Bonds.

10. The Contract and the Bonds were executed by all parties in the State of Georgia and delivered in the State of Georgia, and were to be performed, in part, in the State of Georgia.

11.    The Performance Bond expressly incorporated by reference the Contract, and bound Defendants and Choate jointly and severally for performance of the Contract.

12.    The Performance Bond states in relevant part, in Article 9, that "Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located."

13.    The Contract called for Choate to perform the work and construct the Project on a "cost-plus-a-fee" basis, subject to a Guaranteed Maximum Price ("GMP"). More specifically, Choate was to be reimbursed by Berkman the actual cost of performing the work (as defined by the Contract) plus an agreed-upon fee ("Contractor's Fee"), provided, however, that the total amount to be paid to Choate was guaranteed not to exceed the GMP (which GMP amount was subject to adjustment in the manner prescribed in the Contract). The total adjusted GMP as of this date is $36,069,003.80. To the extent the final cost of the work plus the Contractor's Fee was less than the GMP, the Contract called for the difference (the "Savings") to be shared by Berkman and Choate, 60% to Berkman and 40% to Choate.

14.     The Contract also required Choate to complete the construction of the Project by no later than May 2, 2008 (which date was also subject to adjustment in accordance with the terms of the Contract). The adjusted required completion date, as of this date, is June 16, 2008 (as agreed to in Change Order No. 26, dated October 1, 2007).

15.     Choate performed a portion of, but did not substantially complete, its work and other obligations under the Contract.

16.     Berkman fully paid Choate for all of the work Choate properly performed under the Contract as such payments became due. Specifically, Berkman paid Choate an amount equal to or in excess of $15,387,843.80 for work performed on the Project. In fact, based upon facts which were discovered by Berkman after these payments were made, but which had been previously concealed from Berkman by Choate, it is now apparent that the amount Choate had been paid as of December 6, 2007 exceeded the value of the work in place and the payments to which Choate was entitled under the Contract. Choate has performed no work on the Project since December 6, 2007.

17.     During the course of its work, Choate sent numerous Applications for Payment to Berkman that were riddled with inaccuracies and inconsistencies as to the amount allegedly due to Choate.

- 6 -

18.     The Contract entitled Berkman to request and obtain from Choate supporting cost documentation so that Berkman could verify the costs incurred and payments due. Berkman repeatedly requested this back-up documentation, but Choate failed and refused to provide it. Initially, Berkman paid Choate based upon the sworn Applications for Payment and Choate's certification that the requested payments were due; but as Berkman finally received the existing cost documentation, Berkman realized that Choate had overbilled and had been overpaid and withheld further payments until the amounts due could be verified.

19.     On December 6, 2007, part of the parking garage portion of the Project, which was being constructed by Choate, suffered a catastrophic collapse resulting in a number of injuries and one fatality.

20.     Immediately following the catastrophic garage collapse on December 6, 2007, the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA") began an investigation into the cause of the collapse.

21.     As a result of its investigation, on June 2, 2008, OSHA issued three citations to Choate for safety violations, with penalties totaling $56,700.

22.     Additionally, OSHA cited two of Choate's subcontractors for safety violations on the Project. Choate was contractually responsible to Berkman for the actions and omissions of its subcontractors on the Project.

23. Since December 6, 2007, Choate has performed no work on the Project and has received no additional payments from Berkman as no additional payments were due under the Contract.

24. Notwithstanding the foregoing, Choate filed and recorded a Claim of Lien against Berkman's Property on April 29, 2008, falsely alleging that it had furnished labor, services and materials having a total value of $36,069,003.80, and that it was owed $4,506,000.00 under the Contract at that time (hereinafter referred to as the "Claim of Lien"). This improper Claim of Lien jeopardized the funding of the Project and caused substantial damage to Berkman. Choate subsequently acknowledged that the vast majority of the $4,506,000 included in the Claim of Lien represented charges for windows and elevators which were never paid for by Choate and have not been delivered to the Project.

25. Paragraph 3 of the Performance Bond states that the Sureties' obligations under the Performance Bond arise after: (a) Berkman has notified Choate and the Sureties that Berkman is considering declaring a Contractor default and attempted to arrange a conference with Choate and the Sureties and (b) Berkman has declared a Contractor Default and formally terminated the Contractor's right to complete the Contract.

26.     In a letter dated April 15, 2008, a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "C"**, counsel for Berkman attempted to arrange a meeting between Berkman, Choate, and the Sureties for April 30, 2008 to discuss the fact that Berkman was considering declaring a contractor default and to attempt to arrive at a satisfactory solution.

27.     The Sureties failed to respond to the April 15, 2008 letter referred to in Paragraph 26.

28.     As a result of Defendants failing to confirm that they would have representatives present at the meeting scheduled for April 30, 2008, Choate's filing of a fraudulent Claim of Lien on April 29, and the fact that it became obvious to Berkman that the meeting would serve no useful purpose, Berkman cancelled the April 30, 2008 meeting.

29.     In a letter dated June 16, 2008, a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "D"**, Berkman formally terminated Choate's Contract, and called upon the Sureties to take appropriate action pursuant to Paragraph 3 of the Performance Bond.   The termination was warranted and proper in all respects and was effected in accordance with the terms of the Contract.

30. On June 18, 2008, Berkman brought suit against Choate in the Circuit Court of the Fourth Judicial Circuit in Duval County, Florida seeking to discharge Choate's Claim of Lien and seeking damages for breach of contract.

31. In a letter to the Sureties dated June 30, 2008, a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "E"**, counsel for Berkman reiterated the Owner's demand that the Sureties take action and fulfill their obligations under the Performance Bond, specifically stating that this letter constituted the additional written notice required by the Performance Bond.

32. On or about July 10, 2008, Defendants' representatives inspected the Project site.

33. On July 11, 2008, Defendants notified Berkman that Defendants would undertake to perform and complete the Contract pursuant to Subparagraph 4.2 of the Performance Bond. A true and correct copy of the Defendants' July 11, 2008 letter so notifying Berkman is attached hereto and incorporated herein by reference as **Exhibit "F"**.

34. On July 23, 2008, representatives of Berkman, Defendants, Perini Management Services, Inc. (Defendants' consultant), and the construction lender met in Atlanta, Georgia to discuss the Defendants' stated intention to take over and

- 10-

complete the Project. One of the items discussed in this meeting was the need for Defendants to assist in removing the Claim of Lien.

35.    For months thereafter, the Project site lay dormant and unoccupied, as Defendants refused to assume control of the site, secure the site and its safety, mobilize, and begin construction, in breach of their obligations under the Performance Bond and the Contract.

36.    During this time, Berkman repeatedly pleaded with Defendants to resume construction of the Project, but Defendants failed and refused to do so.

37.    On information and belief, Defendants were in constant communication with Choate during this time, and were requesting information from Berkman, purportedly for Defendants' use in resuming construction, and then providing that information to Choate to aid Choate in defending itself in the underlying disputes between Berkman and Choate and in further damaging Berkman.

38.    On September 12, 2008, despite no work having been performed on the Project since December 6, 2007, and despite having its Contract with Berkman terminated on June 16, 2008, Choate, presumably acting in concert with Defendants or at least with Defendants' prior knowledge, filed and recorded

- 11-

another Claim of Lien on Berkman's property, increasing the total lien claimed to $7,802,961.00.

39. While Defendants offered various excuses at various times for failing to commence work on the Project as promised, no valid justification existed.

40. Despite the absence of any reasonable justification and Berkman's repeated pleas to Defendants to commence work, Defendants never did so and never even took the steps necessary to transfer the building permit from Choate to the contractor Defendants indicated they had selected to complete the Project, Perini Building Company. Consequently, the Project continued to sit dormant from July 11, 2008 through February of 2009.

41. After December 6, 2007 (when Choate ceased work on the Project), Berkman became aware of the existence of serious construction deficiencies in both the garage and the tower portions of the Project. Berkman was not aware of these deficiencies prior to December 6, 2007, but the deficiencies were caused by improper construction and shoddy workmanship performed by Choate and its subcontractors prior to the garage collapse. Berkman began testing to determine the extent of the construction deficiencies in the tower. Berkman notified Choate and Defendants of this testing and the results thereof as this information became

available until it became clear that Defendants had no intention of remedying the deficiencies and completing the Project.

42.     On October 3, 2008, almost three months after stating that they would take over the completion of the Project, Defendants notified Berkman that Perini (Perini Management Services, Inc., Perini Building Company, or another related entity) was taking possession of the Project site and finalizing preparations for mobilization.

43.     Although Perini personnel briefly occupied the Project site and conducted a general cleanup, no substantive work was ever performed, Perini and Defendants never initiated the process for transferring the building permit from Choate to Perini, and Defendants refused repeated requests by Berkman for copies of the completion contract between Defendants and Perini Building Company and other information and documentation necessary to complete the Project.

44.     On December 18, 2008, Defendants notified Berkman that Perini was, at Defendants' request, abandoning the Project site and withdrawing all personnel.

45.     To the best of Berkman's knowledge and belief, Defendants have not returned to the site since December 18, 2008. Moreover, Defendants have persisted in failing and refusing to perform any work on the Project.

46.     In the eight-plus months since Defendants obligated themselves to complete the Project, Defendants and their representatives, including Perini, failed to perform any substantive construction on the Project.

47.     To date, Defendants have failed to remedy their breach of their obligations under the Bonds and the Contract.

48.     From the time Choate was terminated in June of 2008, until February of 2009, Berkman was precluded from engaging another contractor to complete the Project due to the fact that the Performance Bond gave Defendants the option of doing so and the fact that Defendants had exercised this right (but failed to ever act upon it).   Berkman incurred significant additional damages as a result, which damages were greatly exacerbated by the severe economic downturn which occurred after June of 2008.

49.     Moreover, even when Berkman attempted to retain another contractor to perform discrete items of work (specifically the work called for by Construction Change Directive 005) in order to get the Project moving forward and mitigate the schedule delay, Defendants objected and prevented Berkman from doing so.

50.     Berkman has suffered, and continues to suffer, extraordinary damages due to Defendants' breach of their obligations under the Performance Bond.

51.     Having failed to fulfill its obligations under Subparagraph 4.2 of the Performance Bond as they have promised, Defendants also have not complied with Subparagraphs 4.3 or 4.4, and various other terms of the Performance Bond, either.

52.     Conversely, all of Berkman's obligations under the Contract and the Bonds have been fully performed, fulfilled, waived, or excused.

## COUNT ONE

## BREACH OF PERFORMANCE AND PAYMENT BONDS

53.     Plaintiff Berkman incorporates herein by reference and realleges the allegations contained in Paragraphs 1 through 52 of this First Amended Complaint.

54.     Under the terms of the Bonds which Choate was required by its Contract to furnish and did furnish at Berkman's expense, Defendants, as the sureties, and Choate, as the principal, jointly and severally bound themselves, and their successors and assigns, to Berkman for the performance of the Contract (under the Performance Bond) and to pay for all labor, materials, and equipment furnished for Choate's use in performing the Contract (under the Payment Bond). See **Exhibit "B"**.

55.     An attachment to each of the Bonds designates Federal as "Surety A" and F&D/Zurich as "Surety B," each with a "Limit of Liability" of $18,050,148.50, which is half of the total penal sum of each Bond, $36,100,297.

56.     By electing to complete the Contract pursuant to Subparagraph 4.2 of the Performance Bond (which they then failed to do), Defendants waived any limits of liability afforded by the penal sum of the Performance Bond that may have otherwise been applicable.

57.     Paragraph 1 of the Performance Bond specifically states as follows: "The Contractor [Choate] and the Surety [Zurich, F&D, and Federal], jointly and severally, bind themselves, their heirs, executors, administrators, successors, and assigns to the Owner [Berkman] for performance of the Construction Contract, which is incorporated herein by reference."

58.     Paragraph 1 of the Payment Bond specifically states as follows: "The Contractor [Choate] and the Surety [Zurich, F&D, and Federal], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner [Berkman] to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference."

59.     Once the conditions set forth in Paragraph 3 of the Performance Bond were satisfied (as they were here), Paragraph 4 of the Performance Bond required the Sureties to take prompt action by either: a) arranging for the Contractor to complete the Contract *with the Owner's consent*; b) performing and completing the

Contract itself or through other contractors; c) determining its liability to the Owner and tendering payment; or d) denying liability and notifying the Owner of its reasons therefor. Rather than deny liability and require/allow Berkman to hire another contractor to complete the Project in July of 2008, Defendants elected to complete the Contract and so notified Berkman, with the knowledge that Berkman would rely upon that commitment.

60.    Paragraph 5 of the Performance Bond states that"[i]f the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default of this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled enforce any remedy available to the Owner."

61.    In a letter dated January 9, 2009, a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "G"**, Berkman declared Defendants in breach and default of Defendants' obligations under the Performance Bond.

62.    By a subsequent letter dated February 2, 2009, a true and correct copy of which is attached hereto and incorporated herein by reference as **Exhibit "H"**, Berkman confirmed that the default had become effective.  Berkman's declaration

of Defendants' default was warranted and proper in all respects and was effected in accordance with the terms of the Performance Bond.

63.     By letter dated February 6, 2009, a true and correct copy of which is attached hereto as **Exhibit "I"**, Berkman advised Defendants that they had forfeited their right to complete the Project, requiring Berkman to take additional steps to mitigate its damages.

64.     Pursuant to Paragraph 6 of the Performance Bond, the Sureties are obligated to Berkman for, among other things, "[a]dditional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4."

65.     Pursuant to the terms of the Performance Bond, and Defendants' election to complete the Project upon Berkman's termination of Choate, Defendants were obligated to perform the Contract with reasonable promptness and complete the Project.

66.     Defendants have failed to complete the Project and have materially breached their obligations under both the Payment Bond and Performance Bond, and the Contract, which the Bonds incorporated. Specifically, Defendants:

> a. Failed to remedy the breach and default of their bond principal, Choate;

b. Failed to execute a contract with a completion contractor to perform the work necessary to complete the Project after Choate's termination and/or to provide a copy of that contract to Berkman upon request;

c. Failed to transfer the required building permit from Choate to its completion contractor;

d. Failed to remedy various construction deficiencies caused by Defendants' bond principal, Choate, as requested by Berkman and required by the Contract and the Performance Bond;

e. Failed to perform the work called for by Constructive Change Directive 005, issued by the Project Architect;

f. Failed to secure assignments of, or take over, subcontract agreements with previous subcontractors on the Project, and/or failed to enter into new subcontracts for the completion of the Project work;

g. Failed to timely assume control and custody of the site and maintain its safety;

h. Failed to facilitate the safe and orderly removal of items on site belonging to Choate's subcontractors and suppliers;

i. Generally failed to do anything of substance to advance the Project;

j. Failed to provide important information requested by Berkman pursuant to the Contract;

k. Failed to pay at least some of Choate's subcontactors and suppliers for labor, materials and equipment furnished on the Project, resulting in their filing of various claims of lien against Berkman's property and the filing of lawsuits against Berkman. Defendants have also failed and refused to indemnify or otherwise hold Berkman harmless from these claims of liens and lawsuits.

l. Acted in bad faith by interfering with Berkman's relationship with its lender;

m. Acted in bad faith by failing to make a good faith investigation into Choate's Claim of Lien;

n. Acted in bad faith by failing to remove or assist in removing Choate's Claim of Lien and by aiding and abetting, or at least acquiescing, in Choate's filing of its second Claim of Lien which increased, rather than removing or decreasing, the improper cloud upon Berkman's title to its property; and

o. Acted in bad faith by stalling, halting and otherwise delaying construction of the Project for over eight months, all the while assuring Berkman they would complete the Project (and preventing Berkman from retaining another contractor to do so).

67.    As a result of 1) Defendants' failure to perform its obligations under the Bonds and 2) Defendants' various acts of bad faith, the Project has been significantly delayed, damaged, and rendered more expensive, and seriously jeopardized, and Berkman has been significantly damaged.

68.    Berkman has also incurred, and continues to incur, various costs of the types identified in Paragraph 6 of the Performance Bond and other costs recoverable under the Bonds and applicable law.

**WHEREFORE**, Plaintiff Berkman requests that:

(1)    The Court find Defendants in breach of their obligations under the Bonds and enter judgment in Plaintiff Berkman's favor;

(2)    The Court award Plaintiff Berkman damages in an amount to be proven at trial, as well as prejudgment and post-judgment interest thereon at the maximum rate allowed by law, and its reasonable attorneys' fees and the costs of this action pursuant to O.C.G.A. § 13-6-11 on the grounds that Defendants have acted in bad faith,

have been stubbornly litigious, and have caused Berkman unnecessary trouble and expense; and

(3)    The Court grant Berkman such other relief as the Court deems proper.

## COUNT TWO

### FRAUD

69.    Plaintiff Berkman incorporates by reference and realleges the allegations contained in Paragraphs 1 through 68 of this First Amended Complaint.

70.    By way of correspondence dated July 11, 2008, Defendants promised to take over and complete performance of the Contract, pursuant to their obligations under the Performance Bond, including Subparagraph 4.2. See **Exhibit "F"**.

71.    At a meeting held on July 23, 2009, Defendants' representatives assured Berkman that Defendants intended to mobilize and resume construction of the Project, in accordance with the Contract and Defendants' election to complete the work under the Performance Bond.

72.    Despite these representations and promises, and similar ones made in subsequent communications, Defendants never took any substantive action or

- 22-

performed any substantive work in furtherance of completing performance of the Contract.

73.    On information and belief, Defendants maliciously misrepresented their intentions to complete the Contract to Berkman in order to prevent Berkman from hiring a new general contractor to complete the Project and/or to gain some undue advantage in the Sureties' and Choate's dispute with Berkman.

74.    In reality, Defendants did not intend to complete the Contract and finish construction of the Project at the time Defendants made representations to the contrary, as evidenced by the following conduct:

a.    Defendants failed to ever enter into a completion contract with a general contractor and/or to provide a copy of same to Berkman;

b.    Defendants failed to have their completion contractor enter into any subcontracts with previous or new subcontractors;

c.    Defendants failed to transfer the building permit from Choate to a new contractor;

d.    Defendants failed to occupy the Project site or mobilize in any way for three months;

e.    Defendants abandoned the Project site after only one month of creating a skeletal presence;

f.     Defendants refused to comply with any of Berkman's and/or the
Project Architect's numerous requests to begin construction or to remedy
construction deficiencies caused by Choate, Defendants bond principal.

75.    In reliance upon Defendants' fraudulent misrepresentation that
Defendants intended to perform the Contract and complete construction, Berkman
did not hire a new general contractor to begin work in July of 2008.

76.    As a result of Defendants' fraudulent misrepresentations, and
Berkman's reliance thereon, no work has been performed on the Project since July
of 2008.

77.    Plaintiff has sustained great loss, damage, and injury due to these
actions by Defendants.

78.    Plaintiff is also entitled to recover punitive damages from Defendants
under the facts present.

79.    All conditions precedent to the bringing of this action have been
satisfied, excused, or waived.

**WHEREFORE**, Plaintiff Berkman demands judgment against Defendants
Zurich, F&D, and Federal for its actual damages in the amount proven at trial and
all costs and other amounts recoverable under the governing law, including
prejudgment and post-judgment interest, punitive damages, reasonable attorneys'

fees and costs pursuant to O.C.G.A. § 13-6-11 on the grounds that Defendants have acted in bad faith, have been stubbornly litigious, and have caused Berkman unnecessary trouble and expense, and such other and further relief as the Court deems just and proper and supported by the evidence.

## COUNT THREE

## TORTIOUS INTERFERENCE
### (With Berkman's Contractual And Business Relationships With Its Lender)

80.    Plaintiff Berkman incorporates by reference and realleges the allegations contained in Paragraphs 1 through 79 of this First Amended Complaint.

81.    Berkman's construction lender for the Project is Wachovia Bank, National Association ("Wachovia").

82.    Prior to Defendants' promise to take over and complete the Project, Berkman and Wachovia enjoyed a harmonious professional relationship.

83.    This relationship included the existence of one or more binding contracts between Berkman and Wachovia, including the construction loan agreement for this Project.

84.    Since the time Defendants stated they intended to takeover and complete the Project, Defendants have sent correspondence to Wachovia regarding the Project, despite Berkman's numerous objections, making damaging accusations and improper demands upon Wachovia as the construction lender.

85.    In addition to its direct communications with Wachovia, the Defendants have also tortiously interfered with Berkman's relationship with its lender through various other actions, including, but not limited to, its actions of: (a) on the one hand, representing to Berkman that it would complete the Project in accordance with Choate's Contract (which Berkman reported to Wachovia), while, on the other hand, failing to take any action whatsoever to advance the completion of the Project and (b) facilitating Choate's filing and maintaining of two fraudulent Claims of Lien.

86.    As a result of Defendants' improper tortious interference with Berkman's contractual and business relationship with Wachovia, that relationship has been severely damaged, Berkman's business reputation has been irreparably harmed, and Berkman has suffered and will suffer serious economic losses, the amount of which is not yet ascertainable.

87.    Berkman is also entitled to recover punitive damages from Defendants' under the facts present.

**WHEREFORE**, Plaintiff Berkman demands judgment against Defendants Zurich, F&D, and Federal for its actual damages in the amount proven at trial and all costs and other amounts recoverable under the governing law, including prejudgment and post-judgment interest, punitive damages, reasonable attorneys'

fees and costs pursuant to O.C.G.A. § 13-6-11, on the grounds that Defendants have acted in bad faith, have been stubbornly litigious, and have caused Berkman unnecessary trouble and expense; and such other and further relief as the Court deems just and proper and supported by the evidence.

## COUNT FOUR

## BAD FAITH PURSUANT TO O.C.G.A. § 10-7-30

88.   Plaintiff Berkman incorporates herein by reference and realleges the allegations contained in Paragraphs 1 through 87 of this First Amended Complaint.

89.   Pursuant to the terms of the Bonds, Defendants jointly and severally bound themselves, along with their bond principal, Choate, to perform the Contract and to construct the Project in accordance with the Contract terms.

90.   Pursuant to the terms of the Bonds, and Defendant's election to complete the Project under Subparagraph 4.2 of the Performance Bond upon Choate's default, Defendants were obligated to remedy Choate's default and complete the construction of the Project.

91.   Instead of performing the work, satisfying their contractual and legal obligations, and remedying Choate's default, Defendants acted in bad faith by refusing to commence a remedy and fabricating various excuses for not performing

- 27-

the work, without having, and knowing they did not have, any reasonable justification for refusing to perform.

92.   Despite repeated requests, pleas, and demands by Berkman, Defendants failed to advance the construction of the Project, or to take any steps to remedy Choate's or their own default, after committing on July 11, 2008 that they would complete the Project.

93.   In a letter dated January 9, 2009 – after approximately six months of trying to persuade Defendants to commence performance as promised - Berkman notified Defendants that Defendants were in breach and default of their obligations under the Bonds. *See* **Exhibit "G"**.

94.   More than sixty days have passed since Defendants were notified of their breach and default of their obligations under the Bonds, without Defendants commencing any remedy.

95.   Defendants have continued to take no action to remedy their breach and default of their obligations under the Bonds, and have failed to even commence any remedy, to make payment to Berkman to compensate Berkman for the breach, and to otherwise perform their obligations under the Bonds.

96.    As a direct and foreseeable result of the foregoing material breaches of the Bonds by Defendants, Berkman has incurred and will continue to incur substantial damages in an amount which cannot yet be fully ascertained.

97.    Also, as a result of Defendants' material breaches of the Bonds and bad faith conduct, Berkman has been required to retain the undersigned attorneys to represent it in this matter, and has become obligated to pay said attorneys a reasonable fee for their services, for which fees Defendants are liable under applicable Georgia law, including O.C.G.A. § 10-7-30, O.C.G.A. § 13-6-11 (on the grounds that Defendants have acted in bad faith, have been stubbornly litigious, and have caused Berkman unnecessary trouble and expense), and the terms of the Bonds.

98.    Defendants' failure and refusal to commence any remedy of the default was done in bad faith.

99.    Defendants' bad faith conduct entitles Berkman to a claim against them pursuant to O.C.G.A. § 10-7-30 and to recover all damages resulting therefrom plus a 25% penalty and attorneys' fees.

100.    All of Berkman's obligations under the Bonds have been fully performed, satisfied, excused, or waived, and all conditions precedent to the

bringing of this action, including Berkman's claim under O.C.G.A. § 10-7-30, have occurred or have been satisfied, waived or excused.

**WHEREFORE,** Plaintiff Berkman demands judgment against Defendants for its actual damages in the amount proven at trial, plus prejudgment and post-judgment interest at the maximum rate allowed by law, plus an additional 25% of its damages and its reasonable attorneys' fees and costs pursuant to O.C.G.A. §§ 10-7-30 & 13-6-11, and such other and further relief as the Court deems just and proper and supported by the evidence.

## DEMAND FOR JURY TRIAL

Berkman hereby respectfully demands a trial by jury as to all Counts and issues in this First Amended Complaint which are so triable.

Respectfully submitted this 2nd day of July, 2009.

### SMITH, CURRIE & HANCOCK LLP

By: */s/ Philip E. Beck*

Philip E. Beck
Georgia Bar No. 046015
John E. Menechino, Jr.
Georgia Bar No. 502010
C. Damon Gunnels
Georgia Bar No. 843266

2700 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303-1227
Telephone: (404) 582-8028
Facsimile: (404) 688-0671

## CERTIFICATE OF COMPLIANCE

Pursuant to the Local Rules 5.1B of this Court, I hereby certify that this document has been prepared using Times New Roman 14-point with the appropriate margins and spacing.

By:  */s/ Philip E. Beck*
Philip E. Beck
Georgia Bar No. 046015

## CERTIFICATE OF SERVICE

I hereby certify that I am filing this 2nd day of July, 2009 the foregoing

FIRST AMENDED COMPLAINT electronically through the CM/ECF system and

that copies of that document are being served via U.S. Mail and through the

CM/ECF system which will send notification of such filing to the following

counsel:

James Alfred Black, Jr.
Mills Paskert Divers P.A.
Suite 2010
100 North Tampa Street
Tampa, FL 33602
jblack@mpdlegal.com

Philip Keith Lichtman
Mills Paskert Divers P.C.
Suite 1550
1355 Peachtree Street, N.E.
Atlanta, GA 30309
klitchman@mpdlegal.com

This 2nd day of July.

SMITH, CURRIE & HANCOCK LLP

By: */s/ Philip E. Beck*
Philip E. Beck
Georgia Bar No. 046015